Willie C. FINNEY, Jr., Petitioner,

v.

UNITED STATES RAILROAD
RETIREMENT BOARD,
Respondent.

No. 02–1906.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 2002.

Decided Jan. 16, 2003.

Before POSNER, COFFEY, and MANION, Circuit Judges.

## ORDER

Willie C. Finney, Jr., is a 55–year–old former railroad employee. In January 1999, Finney applied for a disability annuity under § 2(a)(1)(iv) of the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(iv), claiming that back and elbow problems had made it impossible for him to perform his prior work as service center representative. His application was denied, as were his appeals to the Railroad Retirement Board. Finney now petitions for review.

Finney worked for the Canadian Pacific Railway's Soo Line in Milwaukee for nearly thirty years, most recently as a service center representative. In this last position, he would regularly sit for seven hours out of an eight-hour workday and would occasionally have to lift boxes of computer paper weighing between twenty-five and thirty pounds. In 1996, Finney's company relocated to Minneapolis. The company offered him a non-sedentary job at the new location, but because that job's physical requirements exceeded his capacities, he opted instead for a structured buy-out under which he would acquire the thirty years of service necessary to be eligible for a retirement annuity at the age of 60.

On January 15, 1999, near the end of the buy-out period, Finney applied for a disability annuity. To establish his eligibility, he needed to show that he had a permanent physical or mental condition that prevented him from performing his regular railroad occupation. *See* 45 U.S.C. § 231a(a)(1)(iv). According to his medical records, Finney had suffered from back pain since the mid–1980s, and from tendinitis since 1994. He reported on his application that these conditions had affected his ability to work since March 1994, and had made it impossible for him to work since December 22, 1996–the date on which his job was eliminated. He stated in particular that "typing gives me tendonitis [sic] in both elbows" and that "sitting causes extreme back pain all the time," and indicated that sitting, standing, and walking were all difficult to do for long periods of time.

Finney's application was denied on April 19, 1999. After his request for reconsideration was refused, Finney appealed to the Railroad Retirement Board's Bureau of Hearings and Appeals, and was granted a hearing on November 22, 1999. At the hearing, Finney testified concerning his back and elbow problems and his discomfort when standing or sitting for extended periods. Finney also provided the hearings officer with medical records chronicling his history of back pain and other ailments, and a "residual functional capacity questionnaire" from Finney's regular physician, Dr. Lam. The questionnaire stated, among other things, that Finney was capable of performing only low stress jobs.

The hearings officer denied Finney's appeal on January 10, 2000. In his decision, he addressed Finney's testimony concerning back pain, tendinitis, and difficulty dealing with stressful work, and reviewed the supporting medical evidence. He found that the clinical and laboratory evidence did not support Finney's claim that pain would interfere with attention and concentration so as to prevent him from performing stressful jobs. He also found unsubstantiated the claim that tendinitis prevented Finney from performing repetitive grasping or fine manipulation more than thirty percent of the time. In the end, the hearings officer concluded that the medical reports established that Finney could perform his work as a service center representative.

Finney then took his appeal to the Railroad Retirement Board. The Board remanded the case, with instructions that the

hearing officer "appl[y] ... the sequential evaluation for determination of disability for regular railroad occupation set forth by regulations of the Board at 20 CFR 220.13." Also, given a degree of uncertainty as to which of Finney's prior jobs was relevant to the analysis, the Board directed the hearings officer "to make a finding as to Mr. Finney's regular occupation and to explain the basis for that finding." On remand, the hearings officer documented his conclusion that "service center representative" was indeed Finney's regular railroad occupation. Then, reciting the relevant parts of the Board's regulations, the hearings officer explained how his earlier findings demonstrated that Finney had the capacity to return to his regular railroad occupation of service center representative. Finney again appealed to the Board, which denied his appeal on April 17, 2001, upon which Finney appealed to this court.

We will uphold the Board's denial of a disability annuity if the decision is supported by substantial evidence and has a reasonable basis in law. *Holman v. United States R.R. Ret. Bd.*, 253 F.3d 975, 978 (7th Cir.2001). We do not supplant the judgment of the Board with our own judgment, nor do we re-weigh the evidence in order to decide whether a petitioner is disabled. *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir.1993).

■ Reviewing the evidence relied upon by the hearings officer, we consider it to be substantial. His report analyzed the reports from Finney's regular physician and from the consultant physician–along with Finney's own testimony–concerning Finney's symptoms, conditions and capabilities. He acknowledged the evidence that Finney had cited in support of his claims, but found them to be unsubstantiated by the clinical evidence. We therefore believe that the hearings officer's reports were based on substantial evidence.

■ Finney argues, however, that the hearings officer failed to follow the evaluative procedure outlined in 20 C.F.R. § 220.13, most importantly the requirement that he explicitly determine the applicant's residual functional capacity (RFC). This is true. In fact, it appears from the revised decision's extended quotation of § 220.13 that the hearings officer carried out his evaluation according to an outdated version of the regulation–Part 220 having been amended in early 1998. *See* Determining Disability, 63 Fed.Reg. 7538, 7541–42 (Feb. 13, 1998) (amending 20 C.F.R. § 220.13). This amendment was applicable to all applications for disability annuity filed (like Finney's) on or after January 1, 1998, 63 Fed.Reg. at 7538, and introduced, among other things, the RFC requirement that Finney claims the hearings officer ignored.

We cannot say that we are impressed with the hearings officer's lack of currency with respect to his own governing regulations, nor with the Board for failing to notice this error. But as we stated in *Dray v. R.R. Ret. Bd.*, 10 F.3d at 1313, "our doubts about the reasoning of the hearing officer need not compel the court to modify or reverse the denial of benefits." Comparing the two versions of the regulation, we do not discern a substantive change in the relevant criterion: whether the applicant is still able to perform in his old job. As the discussion preceding the amendment explains, the new version of § 220.13 provides essentially nothing more than "a more detailed description of the process [of evaluation], which is described in § 220.13(b)(3) of the present regulation." 63 Fed.Reg. at 7538. We believe that the hearings officer's error did not produce a different result than would have been reached by a similar analysis under

the amended regulation, and that it was therefore harmless.

Finally, we note that although Finney claimed in his initial application that his disabilities had prevented him from working since December 22, 1996, it appears that his immediate reason for ceasing to work on that date was his inability to perform the non-sedentary job he was offered in Minneapolis, rather than his inability to perform his then-current job of service center representative. It is not clear that, had that job not been eliminated, Finney's physical difficulties would have prevented him from continuing to work.

We therefore DENY Finney's petition for review.